OPINION
{¶ 1} This matter is before this court on cross-appeals by defendant-appellant/cross-appellee, Janet Kottman-Gregory, and plaintiff-appellee/cross-appellant, Donald Gregory, from a final divorce decree granted by the Madison County Court of Common Pleas, Domestic Relations Division.
 {¶ 2} The parties were married on May 28, 1983. During the course of their 19-year marriage, the parties had two children. Donald filed a complaint for divorce on September 3, 2002, and the parties agreed to a decree of divorce on April 10, 2003. After a series of hearings on the division of marital assets and liabilities and allocation of parental rights and responsibilities, the magistrate filed his decision on June 29, 2004.
 {¶ 3} Among his findings of fact and conclusions of law, the magistrate found that Janet is entitled to a spousal support award of $3,000 per month for 15 years. Further, the magistrate found the value of Donald's residence at 2715 Little Darby Road ("Little Darby Home") to be $280,000, which was a compromise based upon appraisals submitted by both parties, and found that two Personal Seat Licenses ("PSLs") for the Columbus Blue Jackets hockey team had not vested, had no assignable value, and were Donald's separate property. Also, the magistrate designated Janet as the residential parent and sole legal custodian of the parties' two minor children,[1] ordered Donald to pay $1,476 per month in child support, designated Donald the trustee and sole custodian of financial accounts and assets in the names of and for the sole benefit of the two children, and awarded the income tax dependency exemptions for the children to Donald. In determining the value of the parties' individual retirement accounts ("IRAs"), the magistrate awarded Donald an offset credit of $2,109.50. The magistrate also found a Key Bank checking account in Donald's name to be valued at $6,791, and that the funds in this account were marital property. However, when dividing the marital property, the magistrate awarded all of the funds in the account to Donald. In addition, the magistrate ordered Donald to pay Janet $20,000 in attorney fees.
 {¶ 4} Both parties objected to the magistrate's decision. Donald objected to the magistrate's decision regarding spousal support, and the court modified the award as follows: the first year after the decree, $3,500 per month; years two and three after the decree, $3,000 per month; years four, five, and six, $2,000 per month; year seven, $1,500 per month; and no spousal support after the seventh year.
 {¶ 5} In addition, both parties objected to the magistrate's decision with regard to Donald's child support obligation, and the court reduced his obligation to $1,366.75. Both parties objected to the magistrate's decision regarding attorney fees, and the court overruled the objections.
 {¶ 6} Janet objected to the magistrate's compromise valuation of the Little Darby Home at $280,000, and the court found the fair market value of the home to be $265,000. In addition, Janet objected to the magistrate's decisions with regard to the PSLs for the Columbus Blue Jackets, the custodian of the children's accounts, the tax dependency exemptions, the valuation of the parties' IRAs, and Donald's Key Bank checking account. The court overruled each of these objections. Further, Janet filed a Civ.R. 59 motion for a new trial which the court denied.
 {¶ 7} Both parties appeal the trial court's decision. Janet raises nine assignments of error and Donald raises six cross-assignments of error. For the purpose of clarity, we will discuss the parties' assignments of error out of order and together.
 {¶ 8} In Janet's first assignment of error, she argues the trial court abused its discretion in ordering Donald to pay spousal in a declining amount over seven years. Janet maintains that in determining the appropriate amount of spousal support, the trial court ignored her budgetary needs and lifestyle. In Donald's fourth and fifth cross-assignments of error, he argues the trial court erred in awarding spousal support at all.
 {¶ 9} A trial court has broad discretion in determining whether to award spousal support. Vanderpool v. Vanderpool
(1997), 118 Ohio App.3d 876, 878. An appellate court will not disturb a trial court's decision as to whether to award spousal support absent an abuse of discretion. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67. To find abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 10} In determining whether spousal support is appropriate and reasonable, and, if so, "in determining `the nature, amount, and terms of payment, and duration of spousal support,' a trial court must consider all of the 14 factors listed in R.C.3105.18(C)(1), which include the parties' income from all sources, * * * (R.C. 3105.18[C][1][a]); the parties' standard of living established during their marriage (R.C. 3105.18[C][1][g]); the parties' relative assets and liabilities (R.C.3105.18[C][1][i]); and any other factor the trial court expressly finds to be relevant and equitable (R.C. 3105.18[C][1][n])."Hamilton v. Hamilton, Warren App. Nos. CA2001-01-005 and CA2001-01-010, 2002-Ohio-2417, ¶ 98.
 {¶ 11} According to the record, the magistrate considered the factors set forth in R.C. 3105.18(C)(1), and made factual findings upon which the trial court relied. We agree with the trial court, which correctly noted that while Janet earns no income, she can be self-supporting within a reasonable time. Imputing $40,000 per year as Janet's potential income, the magistrate found, "[w]hile [Janet] was the Valedictorian of her Upper Arlington High School Class, graduated Magna Cum Laude [from] Miami University, and the upper one-third of her law school class, and holds a current license to practice [law], she has not worked outside the home in more than seventeen (17) years, per the agreement of the parties, sacrificing her career and her employability to stay home with the children while [Donald] continued to build his own [law] practice." Further, the magistrate found, "[w]hile [Janet] has not been actively involved in the private practice of law in recent years and is not likely to [earn as much as Donald] in the next few years, she has the ability to earn a significant income in a legal-type position." In addition, the magistrate found "there is no physical, emotional, or mental barrier to [Janet's] employment."
 {¶ 12} In determining an appropriate and reasonable amount of spousal support, the magistrate and trial court considered the parties' standard of living during the marriage. Janet maintains she is entitled to spousal support in the amount of $8,100 per month, and has submitted a detailed budget indicating such need. However, Janet has been unable to refute the unequivocal evidence that nothing has prevented her from seeking meaningful employment, other than her own refusal to do so. Despite Janet's assertion to the contrary, "a party is not entitled as a matter of law to continue the luxurious lifestyle enjoyed during the marriage" and "there is no requirement that [the marital standard of living] be duplicated." Hamilton, Warren App. Nos. CA2001-01-005 and CA2001-01-010 at 102, citing Simoni v. Simoni
(1995), 102 Ohio App.3d 628, 632.
 {¶ 13} Further, in considering the assets and liabilities of the parties, the magistrate noted, "[Janet] has less need for income than others * * * as her $250,000 home in Upper Arlington and sport utility vehicle with 30,000 miles were fully paid at the time [Donald filed the complaint for divorce]. In addition, [Janet] is receiving one-half of a sizeable 401(k) retirement account, has IRA/SEP's in her own name, one-half of the savings account at the time of filing, and the children's college tuitions are already paid for."
 {¶ 14} Upon review of the record, we find that the trial court did not abuse its discretion in ordering spousal support. Janet's first assignment of error and Donald's fourth and fifth cross-assignments of error are overruled.
 {¶ 15} In Janet's second assignment of error, she argues the trial court erred in finding the value of the Little Darby Home to be $265,000. A trial court has broad discretion in determining the equitable division of property in a divorce proceeding.Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. James v. James (1995),101 Ohio App.3d 668, 681. An appellate court will not reverse a trial court's valuation of marital assets absent an abuse of discretion. Id.
 {¶ 16} At the hearing before the magistrate, both parties submitted the expert testimony of appraisers who offered different appraisal values of the Little Darby Home. Janet's expert testified the home was worth $300,000, and Donald's expert testified the home was worth $265,000. Upon Janet's objection to the magistrate's compromise valuation of $280,000, the trial court found the value of the home to be $265,000.
 {¶ 17} After reviewing the record, we find the trial court did not abuse its discretion in relying on the appraisal of Donald's expert rather than the appraisal of Janet's expert. Janet's arguments that Donald's expert improperly valued the home are not persuasive. Further, we reject Janet's argument that the trial court improperly sustained her objection to her detriment, as Janet specifically objected to the magistrate's method of valuation. Upon review of the magistrate's decision pursuant to Janet's objection, it was within the discretion of the trial court to determine the value of the Little Darby Home. Also, the fact that Donald attempted to sell the Little Darby Home for $369,000 and ultimately sold the home for $360,000 after the proceedings below has no bearing on the value of the home as of the date of the hearing before the magistrate. Accordingly, Janet's second assignment of error is overruled.
 {¶ 18} In Donald's second cross-assignment of error, he argues the trial court erred in considering the present value of the parties' social security benefits.
 {¶ 19} Retirement benefits and pensions earned during the course of the marriage are marital assets to be considered in dividing marital property. See R.C. 3105.171(A)(3)(a)(ii). "In making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." Neville v.Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, syllabus. "[A]lthough a party's interest in future Social Security benefits cannot be directly divided as a marital asset, that interest must be evaluated and considered by the court in effecting an equitable distribution of the parties' marital assets. More specifically, the interest in Social Security benefits must be evaluated and considered by the court in order to effect an equitable division of the parties' pension and retirement funds. (Citations omitted.) Neel v. Neel (1996), 113 Ohio App.3d 24,29-30.
 {¶ 20} Upon review of the record, we find the magistrate and trial court properly considered the parties' future Social Security benefits in distributing the parties' marital assets, and we find no abuse of discretion in their decisions. Donald's second cross-assignment of error is overruled.
 {¶ 21} In Donald's third cross-assignment of error, he argues Janet has no legal entitlement to his 2002 year-end bonus, which he received after the marriage ended on September 3, 2002.
 {¶ 22} According to the record, the amount of Donald's year-end bonus depends on a formula applied to the annual profits of the law firm in which he is a partner. Donald testified that he could not attribute any of his bonus to specific months of 2002. However, Donald received the bonus based on his work performance during 2002. In the absence of evidence as to what portion of the bonus Donald earned after the end of the marriage, the magistrate applied a percentage to the bonus to determine which portion of the bonus is marital property, and the trial court adopted the magistrate's decision. After reviewing the record, we find that the magistrate did not abuse his discretion in finding that $40,478 of Donald's 2002 year-end bonus is marital property. Donald's third assignment of error is overruled.
 {¶ 23} In Janet's seventh assignment of error, she argues the trial court erred in finding that the PSLs for the Columbus Blue Jackets have no marital value and that they are Donald's separate property. The characterization of the parties' property in a divorce proceeding as marital on nonmarital is a factual inquiry, and the trial court's determination will not be reversed if supported by some competent, credible evidence. Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159.
 {¶ 24} Upon review of the record, we find competent, credible evidence to support the trial court's decision. The record indicates the PSLs are licenses that permit the owner to purchase tickets at face value, and that they were purchased by one of Donald's clients. There is nothing in the record to indicate the PSLs were purchased with marital assets. Accordingly, Janet's seventh assignment of error is overruled.
 {¶ 25} In Janet's third assignment of error, she argues the trial court erred in denying her motion for a new trial based upon new evidence that Donald sold the Little Darby Home for $360,000 after the trial court's decision. A trial court's decision denying a new trial pursuant to Civ.R. 59(A)(8) will not be disturbed, absent an abuse of discretion. Baker v. Dorion,155 Ohio App.3d 560, 2003-Ohio-6834, ¶ 13.
 {¶ 26} Pursuant to Civ.R. 59(A)(8), a trial court may grant a new trial upon newly-discovered evidence that is material for the party applying, which with reasonable diligence the party could not have discovered and produced at trial. "However, as a general rule, matters happening after trial cannot be considered `newly discovered evidence' upon which to justify the granting of a new trial. The test is `newly discovered,' implying it existed at the time of trial, not `newly occurred.'" Schwenk v. Schwenk
(1982), 2 Ohio App.3d 250, 252 (citations omitted). Because Donald sold the Little Darby Home after the trial court decided the matter, evidence of the sale price is not newly-discovered evidence. Janet's third assignment of error is overruled.
 {¶ 27} In Janet's fourth assignment of error, she argues the trial court abused its discretion in designating Donald sole custodian and trustee of the financial accounts and assets held in the names of the parties' children. We review the trial court's decision designating Donald sole custodian and trustee of the accounts and assets for abuse of discretion. Wolk v. Wolk,
Mahoning App. No. 98 CA 127, 2001-Ohio-3415.
 {¶ 28} Upon review of the record, we find no abuse of discretion in the trial court's decision with regard to the custodian and trustee of the accounts and assets. Neither the magistrate nor the trial court provided specific reasons for designating Donald the custodian and trustee, but a review of the transcript of the proceedings before the magistrate indicates the decisions were based on the credibility of the parties. The trial court relied on the magistrate's assessment of the parties' credibility, and we will do the same, as the magistrate was in the best position to make this assessment. See Singh v. Singh,
Warren App. No. CA2002-08-080, 2003-Ohio-2372, ¶ 7. Janet's fourth assignment of error is overruled.
 {¶ 29} In Donald's first cross-assignment of error, he argues the trial court erred in awarding Janet attorney fees. An appellate court will not disturb a trial court's decision awarding attorney fees absent an abuse of discretion. Rand v.Rand (1985), 18 Ohio St.3d 356, 359. Pursuant to former R.C.3105.18(H), in effect at the time the divorce decree was issued, the magistrate found that as of August 21, 2003, Janet's reasonable and appropriate attorney fees were $54,581.82, and awarded Janet $20,000 as a portion of those fees.
 {¶ 30} When in effect, R.C. 3105.18(H) provided:
 {¶ 31} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 32} According to the trial court's decision, "[T]he court finds that [Donald] can pay [Janet's attorney] fees but [Janet] would not be prevented from litigating and protecting [her] rights in the absence of an [award for attorney fees]. [Janet] received a property settlement which placed her in [a] position to pay substantial [attorney fees, but] there was a lack of equity. Under the circumstances, the Magistrate's recommendation of a $20,000 payment toward [Janet's attorney fees] is reasonable and necessary under the totality of the evidence."
 {¶ 33} Upon review of the record, we find no abuse of discretion in the trial court's decision awarding Janet reasonable attorney fees in the amount of $20,000, as the record supports the court's conclusion. Given the length and complexity of the proceedings, and the lack of liquidity in Janet's assets, we find no error trial court's decision. Donald's first cross-assignment of error is overruled.
 {¶ 34} In Janet's fifth assignment of error, she argues the trial court erred in awarding income tax dependency exemptions for the parties' children to Donald. Janet maintains that the evidence presented does not support the findings required to award the dependency exemptions to the nonresidential parent. We review the trial court's decision awarding Donald the dependency exemptions for an abuse of discretion. Corple v. Corple (1997),123 Ohio App.3d 31, 33.
 {¶ 35} In general, under the Internal Revenue Code, the residential parent presumptively receives the tax dependency exemption. Singer v. Dickerson (1992), 63 Ohio St.3d 408, 411. The nonresidential parent may receive the tax exemption if the residential parent signs a written declaration surrendering the tax exemption to the nonresidential parent. Id. In the absence of such a declaration, the nonresidential parent may receive the exemption if the trial court determines that awarding the nonresidential parent the tax exemption would "produce a net tax savings for the parents, thereby furthering the best interest of the child." Id. at paragraph two of the syllabus. Net tax savings occurs through allocation to the nonresidential parent only if the nonresidential parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent. Id. at 415.
 {¶ 36} In determining whether there will be a net tax savings, the trial court must review all of the relevant factors, including "the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at paragraph three of the syllabus. If the trial court does award the tax exemption to the nonresidential parent, the record must show that the best interest of the child has been furthered.Corple, 123 Ohio App.3d at 34.
 {¶ 37} Upon review of the record, we find nothing to indicate what factors the magistrate and trial court reviewed or the basis for their decisions to award the tax dependency exemption to Donald. Absent a written declaration by the residential parent surrendering the tax exemption, or a finding that awarding the nonresidential parent the tax exemption produces a net tax savings for the parents, a court may not award the exemption to the nonresidential parent.[2] Accordingly, we sustain Janet's fifth assignment of error.
 {¶ 38} In Janet's sixth assignment of error, she argues the trial court erred in ordering Donald to pay $1,366.75 per month in child support. She maintains the trial court's order for the minimum child support obligation is inadequate, and the court ignored the children's needs and their pre-divorce standard of living.
 {¶ 39} The Ohio Child Support Guidelines are intended to be used by the courts when determining the appropriate level of child support. Hurdelbrink v. Hurdelbrink (1989),45 Ohio App.3d 5. An appellate court will not disturb a trial court's determination regarding child support absent an abuse of discretion. Pauly v. Pauly, 80 Ohio St.3d 386, 390,1997-Ohio-105.
 {¶ 40} To calculate child support where the parents' combined gross income is between $60,000 and $150,000, a court must use the worksheet set forth in R.C. 3119.22, combined with the basic schedule set forth in R.C. 3119.021. However, R.C. 3119.04(B) provides:
 {¶ 41} "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of $150,000, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 42} After reviewing the record, we find the trial court erred in calculating Donald's child support obligation. In calculating Donald's child support obligation, both the magistrate and the trial court used $150,000 as the parties' combined gross income pursuant to R.C. 3119.22 and R.C. 3119.021. However, both the magistrate and the court had evidence before it indicating that the parties' combined gross annual income was well in excess of $150,000. In fact, the trial court's computation worksheet indicates it found Donald's average income, over the previous three years to be $277,431, and Janet's actual and imputed income to be $78,000.
 {¶ 43} In responding to Janet's objection to the magistrate's decision regarding spousal support, the trial court merely stated in its decision, "[Janet] argues that [the] child support finding should be based on [Donald's] earnings of $353,356.87 for 2002. For the relevant period, his average earnings are $277,431 resulting in a monthly obligation of $1,394.09 including poundage. [Donald's worksheet] is hereby adopted. [Janet's] objections are overruled."
 {¶ 44} Neither the magistrate nor the trial court offered a justification for determining Donald's child support obligation based on a combined gross income of $150,000. R.C. 3119.04(B) does not preclude the court from using the $150,000 figure, even where the parties' income exceeds this amount. See Longo v.Longo, Geauga App. No. 2004-G-2556, 2005-Ohio-2069, ¶ 66. However, R.C. 3119.04(B) provides that a court "* * * shall
determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." (Emphasis added.) There is nothing in the record to indicate the magistrate or the trial court made the required considerations in light of R.C.3119.04(B), despite the fact that there is ample evidence in the record indicating the needs and standard of living of the children. Accordingly, we sustain Janet's sixth assignment of error.
 {¶ 45} In Janet's eighth assignment of error, she argues the trial court erred in ignoring the parties' in-court stipulations regarding their IRAs. She maintains the magistrate and trial court incorrectly awarded Donald $2,109.50 from Janet's IRA after the parties stipulated that each could keep their respective IRA as separate property.
 {¶ 46} "It is error for a court to disregard the stipulations of the parties and to decide a civil case on a matter agreed by the parties not to be in dispute, unless there is some fundamental reason in the interest of justice to do otherwise."Citizens for Choice v. Summit Cty. Council (2001),143 Ohio App.3d 823, 832, citing Sears Roebuck Co. v. J-Z Realty Co.
(Nov. 2, 1976), Franklin App. No. 76AP-332. We find that the record supports Janet's argument, and Donald in his brief agrees that the magistrate and trial court erred in ignoring the parties' stipulation. Accordingly, we sustain Janet's eighth assignment of error.
 {¶ 47} In her ninth assignment of error, Janet argues the trial court erred in not properly dividing the Key Bank checking account. She maintains the magistrate erred in finding the account to be Donald's separate property, and that the trial court erred in reducing her marital property award by half of the amount contained in the account.
 {¶ 48} In his decision, the magistrate found that the value of the Key Bank checking account was $6,791, and found it to be marital property. However, in distributing the marital assets, the magistrate awarded the account in its entirety to Donald. Upon Janet's objection, the trial court found that as of the date of the termination of the marriage, the value of the account was $258, and then deducted half of the value of the account ($3,395.50) from Janet's award, as if the entire value of the account had been included in the division of marital assets.
 {¶ 49} To determine whether the trial court's decision reducing Janet's award by $3,395.50 was proper depends on whether the magistrate actually awarded Janet that amount in the marital property division. Upon review of the record, we cannot discern whether the magistrate included the account in the marital property division, as the magistrate failed to include his mathematical calculations or any type of worksheet. Accordingly, we sustain Janet's ninth assignment of error.
 {¶ 50} In Donald's sixth cross-assignment of error, he argues the magistrate made a mathematical error in calculating the amount he must pay Janet as a property settlement. Based upon the record before us, we are unable to discern how the magistrate reached the property settlement amount of $44,602.98. Accordingly, we sustain Donald's sixth cross-assignment of error in part.
 {¶ 51} The judgment of the trial court is affirmed in part and reversed in part. We overrule Janet's first, second, third, fourth, and seventh assignments of error, we overrule Donald's first, second, third, fourth, and fifth cross-assignments of error, overrule in part Donald's sixth cross-assignment of error, sustain Janet's fifth, sixth, eighth, and ninth assignments of error, and sustain in part Donald's sixth cross-assignment of error. We remand this matter for the trial court to recalculate Donald's child support obligation in compliance with R.C.3119.04(B), for the court to recalculate the amount of Donald's property settlement payment to Janet in light of their IRA stipulation, and for the court to determine whether the Key Bank account was separate or marital property, and allocate the funds accordingly.
Judgment affirmed in part, reversed in part, and cause remanded.
Powell, P.J., and Walsh, J., concur.
[1] We note that since the magistrate and trial court's decisions, the parties' older child has become emancipated.
[2] Moreover, Donald stated in his oral argument before this court that Janet could have the dependency exemption.